[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
Property at 25 Linden Street in the Village of Oakville, Town of Watertown, had been used in part as a church and in part as a dwelling unit. It was acquired by Robert Hanson on July 1, 1981. Prior to acquisition, Hanson had petitioned the Planning and Zoning Commission for a Special Use allowing him to convert the structure to a three-family dwelling with a one bedroom unit in the basement, a two bedroom unit on the first floor and a three bedroom unit on the second floor. On May 6, 1981, this application was granted. A specific condition was that an additional exterior stairway for the second floor was to be constructed. Hanson did not comply with this requirement but did in fact convert the structure to a three-family use. Despite the lack of the exterior stairway, the Zoning Enforcement Officer did, on June 22, 1983, issue a certificate that the premises complied with zoning requirements. Despite Hanson's denials of there being any major troubles with the septic system or of having done much work on it, I accept the testimony of a tenant in the basement that during her occupancy from 1981 to 1983 she had a problem with the toilet clogging up and overflowing which condition improved after she saw work being done in the yard, and also the testimony of a neighbor that during Hanson's ownership he observed a septic tank brought to the premises and installed in the ground. No permit for the septic tank installation was obtained.
In July, 1983, Phillipe J. and Deborah A. Roger acquired the premises from Hanson. They did install an exterior stairway to the second floor but were required to remove it because it encroached on town property, an adjacent paper street. The Rogers encountered problems with the septic system. These problems continued even after they left one apartment vacant and limited water usage. In August, 1986, Chesprocott, the health agency having jurisdiction, inspected the premises and determined that rather extensive repairs would have to be made to correct the deficiencies. There was no evidence to indicate that any repair work was in fact done.
On March 12, 1986, the Rogers entered into an "Exclusive Right to Sell" agreement with Hanson. Hanson did interest F. Ben Brown and Donald Fitzgerald in the property and this culminated in a sales contract whereunder Brown and Fitzgerald agreed to buy, and the Rogers agreed to sell, the premises for $137,000. Deposit of $13,700 was made by Brown and Fitzgerald and this is still being held by Hanson. The contract is dated March, 1986, the day not being specified. Buyers' obligation to perform was subject to a mortgage contingency provision; that they could obtain a CT Page 1689 mortgage of at least $123,000, at prevailing interest rate, with at least a 25 year term. The buyers agreed to apply for such financing promptly and to pursue the application diligently. Closing was stated to be "on or before June 15, 1986". The contract refers to the premises as "3 Family". In an addendum to the contract, sellers obligated themselves to do certain things, some of which were done but they were unable to establish dates so there is no evidence from which I can conclude that they were accomplished prior to June 15, 1986, and at least some were not done until at least July, 1988. A requirement of "Aluminium side addition" was never completed. There was no evidence from which I can conclude that the requirement that "Sale and closing subject to Seller obtaining Certificate of Occupancy for work done" was ever complied with. It is specifically stated that "Buyer understands that there may be a problem with septic system and agrees to purchase subject property with this knowledge and releases seller from any and all responsibilities with respect to this problem."
The buyers never filed a formal application for a mortgage. Fitzgerald did discuss financing with an officer of Naugatuck Savings Bank, an institution with which he has had a number of financial transactions and which regards him as highly credit worthy. I accept that officer's testimony that he was certain that a mortgage conforming to the contract would be approved, "subject to an appraisal". The only evidence as to value was the agreed sales price and the opinion of Hanson, an experienced real estate salesman, that in June of 1986 he valued the premises at $160,000. Admittedly that opinion is somewhat suspect not only because he was the agent who negotiated a sales contract a few months earlier at $137,000 but also because as part of these proceedings he is claiming a commission, but there was absolutely no rebuttal evidence as to value. Also, I accept the testimony of Fitzgerald that Mr. Rogers told him that the sales price was less than the value of the property.
No closing was held "on or before June 15". I find that the reasons why the buyers did not perform were not only that much of the work required of the sellers had not been completed, but also because there was a second mortgage on the premises and the sales price was not sufficient to pay off both the first and second mortgages and accordingly, the second mortgagor refused to release its lien. I further find that the reason buyers did not file and process a formal mortgage application was because of the delays or failure to perform the work required on the addendum, and these omissions would have a serious impact upon the decision to grant a mortgage.
From time to time Fitzgerald inquired of Mr. Rogers as to the status of a closing and he was always put off. Finally, about CT Page 1690 October, 1986, Mr. Rogers' informed him he would not close, and it was at that time he said the property was worth more than the sales price. This was followed by a letter from the attorney for the Rogers to the attorney for the buyers, dated November 6, 1986, stating that the sellers would not close. On December 10, 1986 Brown assigned his interest in the sales contract to Fitzgerald. I note that the contract forbids an assignment without the consent of the other parties, but I do not regard this as significant because the Rogers had already stated that they would not close and thereby breached the contract.
Based on this scenario, these lawsuits ensued. In #078780, Fitzgerald sued the Rogers for breach of contract and asked for specific performance and monetary damages. The Rogers have asserted eight special defenses; that they were never given notice of a mortgage commitment; that the buyers never asked for an extension of the closing date; that it was impossible for the sellers to perform because they could not obtain a release of the second mortgage; that it was impossible for them to obtain a certificate of occupancy because of the septic tank problem; that Fitzgerald accepted an assignment of the contract from Brown when an assignment without consent was forbidden; that the contract is indefinite because it does not contain the day of the month when executed; but I note that the contract does specify that the deposit was to be completed by March 19, 1986 and obviously it would not be enforceable if that were not complied with; a repetition of the allegation that the buyers never requested an extension of the closing date; and that the addendum is not initialed by the parties. They also filed a counterclaim for vexatious litigation and that the assignment by Brown to Fitzgerald caused them to suffer loss.
In #080224, the Rogers and Hanson alleging misrepresentations on his part that induced them to purchase the premises and that the misrepresentations on his part concerned matters that made it impossible for them to comply with requirements in the addendum to their contract with Fitzgerald and Brown, particularly obtaining a certificate of occupancy for a three-family dwelling. They purchased the premises on or about July 20, 1983 and their writ was served on April 30, 1987 so the three-year statute of limitations, Connecticut General Statutes Section 52-577, had run. There was neither an allegation nor proof of any matter which would cause tolling of the statute. The statute was raised by a special defense and is dispositive of the Rogers claim against Hanson. In turn, Hanson counterclaimed against the Rogers alleging that he had a valid exclusive right to sell agreement with them and providing for a commission of 6% if during the term of that agreement he produced a buyer ready, willing and able to buy the premises at a price acceptable to them, that he complied with the requirements of the listing at an accepted price of CT Page 1691 $137,000 and the Rogers thereafter refused to go through with the sale.
I find that the Rogers breached the contract by failing to complete the items required of them by the addendum and thereafter refusing to close the sale. As to the special defenses, I am not persuaded. It is true that they were never given notice of a mortgage commitment, but this they brought on themselves by failing to complete the work specified in the addendum. I have no doubt but that, based on his credit rating, his prior experiences with Naugatuck Savings, and the evidence of the value of the premises, Fitzgerald could easily have arranged for financing. True, the buyers never asked for an extension of the closing date, but it was the Rogers who kept delaying a closing despite repeated inquiries from the buyers. True, the second mortgagee refused to release its lien unless it was paid, but all that required was money, and the buyers did not make it impossible for the Rogers to raise the necessary amount. The Rogers must have known the amount of the encumbrances when they agreed to the sales price. Further, there was no evidence as to the amount required to pay the first and second mortgage, and Mr. Rogers statement to Fitzgerald that a sale would not leave the Rogers with sufficient funds to buy another home justifies the inference that the mortgages could be paid from the sales price. Assuming that the Rogers could not obtain a certificate of occupancy because of the septic problem, something that was never proved to my satisfaction, the provision in the contract that the buyers were aware of that problem and agreed to accept the premises anyway, constituted a waiver of that condition if it were in fact the cause of the inability. The assignment by Brown to Fitzgerald despite the prohibition in the contract is of no significance because it took place after the Rogers had breached. The bottom of the contract does not contain the day of the month when executed, but the body of the contract does contain an effective date. The addendum is signed by the parties.
Based on all of the above, I am persuaded that the Rogers refused to perform a valid, enforceable contract for the sale of the premises and that Fitzgerald is entitled to specific performance. There being no evidence before me as to the value of the work under the addendum that has not been completed, the only abatement of the sales price that I can award under Schneidau v. Manley, 131 Conn. 285, is nominal which I find to be $100. As to the Hanson counterclaim for a commission, I find in his favor subject to a reduction of $6.00 for the abatement in price.
Judgment may enter for Fitzgerald on his complaint, and for Hanson on his counterclaim, in accordance with this memorandum. In passing, I note that the deposit being held by Hansen is neither his property nor that of the Rogers and therefore can be CT Page 1692 applied to his commission only upon conveyance by the Rogers to Fitzgerald. The vexatious litigation claim is obviously without foundation.
J. HEALEY, STR